[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10224
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-02766-MHS


MAX WAREHOUSING, LLC,

Plaintiff-Appellant,

versus

AUTO-OWNERS INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 22, 2014)

Before ED CARNES, Chief Judge, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Max Warehousing, LLC appeals a grant of summary judgment denying its breach-of-contract and bad-faith refusal-to-pay claims against Auto-Owners Insurance Company.

## I.

Max owned an Atlanta warehouse property that it insured through Auto-Owners. Because Max was paying off a mortgage on the property to Embassy National Bank, the policy listed Embassy both as a mortgagee and as the loss payee — the party that would receive the money if Auto-Owners paid out a claim.[1] The policy agreement provided that Auto-Owners would "[n]ot pay for any loss or damage caused by . . . [v]andalism [or t]heft" if the building was "vacant for more than 60 consecutive days before that loss or damage."

In mid-July 2010 thieves broke into the warehouse, stole copper electrical wiring, and damaged machines. Max filed a $1.2 million claim with Auto-Owners. Auto-Owners denied the claim, asserting that the property had been vacant for more than sixty days before the loss.[2] In July 2012 Max filed suit in Georgia state court for breach of contract and a bad-faith refusal to pay its claim, arguing that the

---

[1] The loss payee is entitled to insurance proceeds to the extent of the debt owed it by the insured. Pearlman v. Sec. Bank & Trust Co., 582 S.E.2d 219, 220 (Ga. Ct. App. 2003).

[2] Max's erstwhile tenant on the property had gone into bankruptcy, and the bankruptcy court allowed it to reject its lease. The tenant turned the keys to the warehouse over to Max on May 31, 2010.

2

warehouse had not been vacant for more than sixty days immediately preceding the burglary.  Auto-Owners removed the case to federal court.

In January 2013 Embassy foreclosed on the property, along with two other Max warehouses it held mortgages on.  Embassy then bought the properties on the courthouse steps for approximately $2.3 million.

Max contends that in May 2013 Embassy assigned its rights under the Auto-Owners policy to Max.  Max included an unauthenticated copy of what it claims was Embassy's assignment as an exhibit to its brief opposing summary judgment.

The district court granted summary judgment to Auto-Owners, finding that Max had no interest in the insurance proceeds.  This is Max's appeal.

II.

We review de novo a grant of summary judgment, and we review the district court's findings of fact for clear error.  Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010).

Because this is a diversity case, state law governs substantive issues of law. See Jackson v. Ga. Dep't of Transp., 16 F.3d 1573, 1580 (11th Cir. 1994) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938)).  Under Georgia law, the "right of an insured . . . to insurance proceeds, claimed pursuant to an insurance contract containing a loss payee endorsement, is determined at the time of loss and to the extent of the insured's established actual loss."  CIT Grp./Equip. Fin., Inc. v.

3

Northbrook Prop. & Cas. Ins. Co., 515 S.E.2d 845, 847 (Ga. Ct. App. 1999).  If "the amount of debt is in excess of the insurance proceeds, a debtor has no interest in the policy proceeds."  Id.  In that circumstance, the debtor has "no claim to the proceeds as a matter of law."  Beasley v. Agricredit Acceptance Corp., 480 S.E.2d 257, 260 (Ga. Ct. App. 1997).

It is undisputed that the amount of the debt Max owed to loss payee Embassy exceeded the amount of its claimed loss.  At the time of the burglary, Max owed more than $2 million to Embassy on its mortgaged properties.  Max sought only $1.2 million from Auto-Owners.  The amount Max owed Embassy was plainly "in excess of the insurance proceeds," so Embassy was entitled under Georgia law to the whole payment.  See CIT Grp., 515 S.E.2d at 847.  Max therefore has "no claim to the proceeds as a matter of law."  See Beasley, 480 S.E.2d at 260.

Max argues that Embassy later assigned the "sole rights to any proceeds from the insurance claim" to Max.  But the district court found that Max had failed to produce the assignment document during discovery or to authenticate the document it later attached to its summary-judgment opposition.  When Auto-Owners timely objected to the document's admission, the district court determined that it could not consider the unauthenticated assignment document.  Max does not address this authentication ruling in its brief and thus has abandoned any argument

4

that it was error.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014) (holding that plaintiffs' failure to address independent grounds for judgment in their brief resulted in abandoning "any argument that the additional reasons the district court stated for dismissing each of the claims was error").  Max failed to produce admissible evidence sufficient to create a genuine issue of material fact about its contention that Embassy assigned it the insurance proceeds.  See Fed. R. Civ. P. 56(e).  Because of that and because Max's breach and bad-faith refusal-to-pay claims are predicated on Auto-Owners' refusal to pay it the insurance proceeds, summary judgment against it was proper.

The district court's judgment is **AFFIRMED**.[3]

---

[3] The district court granted summary judgment on a second independent ground—that Max was judicially estopped from bringing its claim.  Because we affirm on the basis of Max's lack of interest in the insurance proceeds, we do not reach the judicial-estoppel issue.